

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV–15–304

|  |  |
|---|---|
| | **Opinion Delivered** December 9, 2015 |
| RODDRICK BURTON<br>APPELLANT | APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT [NO. CV-2014-27 (BD)] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES<br>APPELLEE | HONORABLE BRENT DAVIS, JUDGE<br><br>AFFIRMED |

## DAVID M. GLOVER, Judge

Roddrick Burton brings this appeal from the order of the Mississippi County Circuit Court affirming the decision of the Arkansas Department of Human Service (DHS) to terminate Burton's eligibility under the Alternatives for Adults with Physical Disabilities (AAPD) program. Although Burton argues four points on appeal, only his challenge to the sufficiency of the evidence is preserved for our review. We affirm the agency's decision.

In June 2012, Burton suffered a hemorrhagic stroke. In November 2012, he applied for benefits under the AAPD program. In January 2013, he was determined eligible for benefits after an assessment by a registered nurse employed by DHS. Burton received twenty-one hours of weekly care provided by a home-health aide, who came seven days per week to help him bathe, get dressed, use the toilet, get food, and eat. Burton's sister, Stephanie Little, a home-health aide, provided most of these services.

In October 2013, the same DHS nurse conducted a reevaluation of Burton using DHS's newly implemented ArPath assessment tool,[1] which was promulgated pursuant to Medicaid rules and regulations and is, therefore, afforded the full force and effect of law. Although the eligibility criteria did not change, the reassessment determined that Burton no longer met the eligibility criteria, and he was terminated from the AAPD program. Burton had originally qualified using the earlier qualitative assessment form. In DHS's notice that Burton was no longer eligible, it cited an admittedly incorrect regulation.

Burton timely requested an administrative hearing, and, after the hearing, the hearing officer affirmed the agency's initial decision in a written decision issued January 6, 2014. The hearing officer found that Burton was not functionally disabled in that Burton was able to perform all three activities of daily living (ADL)—toileting, eating, and ambulation or transferring—without any assistance from another person.[2] Based on the evidence, the hearing officer concluded that DHS had met its burden of proof by showing that Burton did not meet the medical criteria for an individual with a functional disability under the AAPD program.

---

[1] The ArPath assessment tool is a series of 200 questions that are designed to evaluate the beneficiary's level-of-care need for purposes of AAPD. Ark. AAPD Provider Manual § 212.100.

[2] Under the applicable criteria, a person must be unable to perform at least one ADL without extensive assistance or total dependence upon another person, or, at least two ADLs without limited assistance from another person. There are two other means by which an individual may be determined eligible under the AAPD program. However, Burton does not argue that he is eligible under these alternatives. Therefore, we confine our analysis to the ADL criteria.

Burton appealed the administrative decision to the circuit court. After hearing oral argument and reviewing written briefs, the circuit court affirmed the agency's decision. In its order, the circuit court found that the agency decision did not prejudice Burton's substantial rights; was not in violation of constitutional or statutory provisions; was not in excess of the agency's statutory authority; was not made upon unlawful procedure; was not arbitrary, capricious, or characterized by abuse of discretion; and was supported by substantial evidence. Burton now appeals.

In this appeal, our review is directed not to the decision of the circuit court but to the decision of the administrative agency. *Arkansas Dep't of Health & Human Servs. v. R.C.*, 368 Ark. 660, 249 S.W.3d 797 (2007). Review of administrative agency decisions, by both the circuit court and the appellate court, is limited in scope. *Arkansas Dep't of Human Servs. v. Thompson*, 331 Ark. 181, 959 S.W.2d 46 (1998). The standard of review to be used by both the circuit court and the appellate court is whether there is substantial evidence to support the agency's findings. *Id.*

An appellate court sitting in review of a finding of an administrative agency must affirm the agency's finding if the finding is supported by any substantial evidence. Ark. Code Ann. § 25-15-212(h) (Repl. 2014); *C.C.B. v. Arkansas Dep't of Health & Human Servs.*, 368 Ark. 540, 543–44, 247 S.W.3d 870, 872 (2007). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, giving the evidence "its strongest probative force in favor of the administrative agency." *Reed v. Arvis Harper Bail Bonds, Inc.*, 2010 Ark. 338, at 4–5, 368 S.W.3d 69, 73.

SLIP OPINION

As with all appeals from administrative decisions under the Administrative Procedure Act, the circuit court or the appellate court may reverse the agency decision if it concludes that the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error or law; (5) not supported by substantial evidence of record; or (6) arbitrary, capricious, or characterized by abuse of discretion. Ark. Code Ann. § 25-15-212(h).

As we mentioned earlier in this opinion, Burton argues three points that are not preserved for our review.[3] DHS argues that the points are not preserved because Burton never raised them before the agency. Although we believe Burton properly raised his issues before both the agency and the circuit court, neither specifically ruled on those issues. Where neither the administrative agency nor the circuit court makes a ruling on an issue, that issue is not preserved for appellate review. *See Arkansas Contractors Licensing Bd. v. Pegasus Renovation Co.*, 347 Ark. 320, 64 S.W.3d 241 (2001).

This leaves us with Burton's argument that there is no substantial evidence to support the agency's decision. He argues that the decision is against the weight of the evidence and ignores his medical records. The issue, however, is not whether the evidence would support some other finding; rather, the issue is whether the evidence supports the finding that was made by the agency. *Hester v. Arkansas Prof'l Bail Bondsman Lic. Bd.*, 2011 Ark. App. 389,

---

[3]The arguments are that DHS provided a fatally defective notice of its action, that DHS failed to consider his medical history and medical records, and that the undefined nature of the ArPath assessment tool renders the program's eligibility standards arbitrary.

383 S.W.3d 925. To establish a lack of substantial evidence, an appellant is required to demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach the same conclusion. *Id.* The evidence is given its strongest probative force in favor of the agency's ruling. *Id.* Administrative action may be regarded as arbitrary and capricious where it is not supportable on any rational basis. *Id.* An appellant must prove that there was a willful and unreasoning action, without consideration, and in disregard of the facts and circumstances of the case. *Id.*

Melissa Morris, the DHS nurse who conducted both the original assessment and the reassessment that resulted in the determination that Burton was no longer eligible, testified that she tries to gauge whether the patient is having a good day or a normal day when doing an assessment. She also said that she tries to ask the questions relating to the ADLs in two or more ways to make sure the patient understands what is being asked. She expressed her opinion that Burton's condition had improved. She said that when she saw him in December 2012, Burton had recently had a stroke and had recently moved to Arkansas. According to Morris, Burton required assistance with transfers and ambulation at that time because he was not even able to get out of the bed without somebody helping him up.

Morris testified that, as part of her assessment, she directly asked Burton "[D]o you need help with transfers, do you need help with walking?" She also reported watching Burton walk with his Hemi–Walker without any assistance or without any family member beside him. Morris said that Burton was further observed as being able to transfer into and out of bed without difficulty. Morris testified that Burton reported that he was able to toilet independently as long as he wore pull-up clothing and sweats. She quoted Burton as saying

"as long as I have these on. This is why I wear them all the time. I can go by myself." She said that she scored Burton as independent in toileting because Burton had a bar to help him up and off the toilet, even though Burton told her that he did not need the device. She stated her opinion that Burton was able to clean himself without assistance. Morris said that she made the distinction in toileting between Burton pulling his pants up and down versus getting on and off the toilet. Burton was eating cereal without help when Morris walked in, and he reported that after somebody set up his tray and prepared his food that he was able to always feed himself. The definition of eating does not include the preparation of meals, only the act of putting the food into the mouth, said Morris.

Burton admitted that Moore's testimony was an accurate recap of what had taken place during the assessment interview. He then went on to deny that he was able to walk without someone being close in case he loses his balance. He also said he cannot sit on the toilet or clean himself afterwards because he uses his right arm to hold onto the rail in order to maintain his balance.

On appeal, Burton argues that Morris's testimony is contradicted by testimony from him; his sister, Stephanie Little, who provided some care under the AAPD program; and his mother, Linda Robinson; as well as his medical records. However, it is for the agency to determine where the preponderance of the evidence lies; upon appellate review, we consider the evidence in the light most favorable to the agency's decision and uphold that decision if it is supported by substantial evidence. *Walls v. Arkansas Oil & Gas Comm'n*, 2012 Ark. 418. It is also exclusively within the province of the agency to determine the credibility and the weight to be accorded to each witness's testimony. *See id*. Because DHS's

determination is supported by substantial evidence, we must affirm. *Id*. Moreover, because the agency's decision is supported by substantial evidence, the decision cannot be classified as arbitrary or capricious. *Arkansas Pub. Emps. Ret. Sys. v. Taylor*, 2013 Ark. 37, 425 S.W.3d 738.

Affirmed.

HIXSON and HOOFMAN, JJ., agree.

*Kevin R. De Liban*, Legal Aid of Arkansas, Inc., for appellant.

*Clay Larson*, Office of Chief Counsel, for appellee.