Cite as 2026 Ark. App. 132

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-25-67

| | |
|---|---|
| BRANNON PATTERSON<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES OFFICE OF APPEALS AND HEARINGS, KRISTIN PUTNAM, SECRETARY<br><br>APPELLEE | Opinion Delivered February 25, 2026<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TWELFTH DIVISION<br>[NO. 60CV-23-6604]<br><br>HONORABLE CARA CONNORS, JUDGE<br><br>AFFIRMED |

## WENDY SCHOLTENS WOOD, Judge

Brannon Patterson appeals from an order of the Pulaski County Circuit Court affirming the administrative decision of the Arkansas Department of Human Services (DHS) Office of Appeals and Hearings (OAH) denying his application for a Community and Employment Supports Waiver (CES Waiver). His sole point on appeal is that the OAH decision was not supported by substantial evidence. We affirm.

The CES Waiver program is enabled by federal statute for the purpose of providing home or community-based services for individuals with a qualifying developmental disability who, but for the provision of such services, would require institutionalization. 42 U.S.C. § 1396n(c)(1). DHS is the state agency responsible for administering the program and determining which applicants are eligible for a CES Waiver. Patterson had twice applied for

CES Waiver eligibility and was denied on January 29, 2019, and October 29, 2021. In December 2021, Patterson applied a third time, claiming two qualifying developmental disabilities: autism spectrum disorder (ASD) and intellectual disability. In August 2022, DHS denied his third application in a fourteen-page letter authored by Dr. Carl Reddig.

After his eligibility waiver was denied, Patterson requested a hearing with the OAH, which was held on February 13, 2023. Patterson did not contest the determination relating to intellectual disability, and thus the proceedings—and this appeal—relate only to a qualifying diagnosis of ASD.

Dr. Reddig, a licensed psychologist for the Developmental Disabilities Services (DDS) division of DHS, testified that he has a master's degree in psychology and a doctorate in counseling and had been practicing for forty-six years. He said that he had worked as a psychological examiner for DDS from 1980 to 1994, at which time he began working for DDS as a psychologist. He said that the team he currently supervises consists of four master-level psychological examiners and one psychologist. He testified about his team's history evaluating Patterson's eligibility for the waiver program and about the August 2022 denial.

He explained that the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, (DSM-5) lists two major diagnostic criteria for a diagnosis of ASD: persistent deficits in social communication and restrictive repeated patterns of behaviors, interests, or activities. *Am. Psych. Ass'n*, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2022). Regarding persistent deficits in social communication, he said that his team's review of nine years of behaviors indicates that Patterson does not meet the criteria and that none of the reports

they reviewed from 2012 through 2020 mentioned autism. He explained that Patterson was often willing to interact with others, sometimes being quite functional, and that his difficulties appeared to be situationally dependent. Dr. Reddig gave the following examples from the reports: in 2012, Patterson was friendly and rapport with him was easily established and maintained; in 2015, Patterson was pleasant and cooperative; in several different 2016 reports, Patterson was unstable with frequent crying and complaining and then generally cooperative, able to maintain good eye contact, and compliant; in 2017, Patterson was extremely talkative at one point but needed a lot of support to complete his work at another time; and finally in 2020, Patterson was able to maintain good eye contact and follow directions, although requiring some queuing during challenging tasks.

Dr. Reddig also referenced the 2021 review conducted by Dr. Taisha Jones, a psychologist at the Arkansas State Hospital, who diagnosed Patterson with ASD, stating that Dr. Jones noted Patterson responded well to encouragement, that he was humorous and attempted to engage with others, and that his difficulties appeared to be situationally dependent. Dr. Reddig said such variability with the capability to socially interact is not suggestive of ASD.

Dr. Reddig then testified about the second major diagnostic criteria for ASD: restrictive repeated patterns of behavior, interest, or activities, including stereotypical or repetitive motor movements, insistence upon sameness, highly fixated interests, and the hyper or hypo reactivity to sensory input. He said none of these aspects were mentioned in the nine years of behavior observations of Patterson that he reviewed. He recognized that

Patterson's mother, Amanda Beckham, completed a Gilliam autism-rating scale in which Patterson scored high on the restrictive-repetitive-behaviors section, but he said her assessment was an isolated observation, and this behavior was not reflected in any of the other information he reviewed on Patterson. He agreed that Patterson has some significant functional deficits, but he said Patterson does not meet the criteria for ASD.

Dr. Reddig also reviewed the reports from two doctors at the Arkansas State Hospital who diagnosed Patterson with ASD: Dr. Jones and Dr. Veronica Williams, a psychiatrist. Although he reviewed their reports, he said that his team is required to follow the criteria in the DSM-5 and does not take any physician's diagnosis without analysis and consideration of all the information presented. Dr. Reddig noted that Dr. Jones said Patterson responded well to encouragement, that he was humorous and attempted to engage with others, and that his difficulties appeared to be situationally dependent, which Dr. Reddig and his team determined did not meet the persistent-social-deficit requirement for an ASD diagnosis. He said that Dr. Williams determined that Patterson had a chromosomal anomaly that was characterized by, among other things, ASD. Dr. Reddig opined that just because a chromosomal abnormality is characterized by something does not mean any particular person with the anomaly will have the characteristic.

Patterson presented only the testimony of his mother, Amanda Beckham. She testified that she had answered the questions on the Gilliam autism-rating scale truthfully, stating that Patterson flaps his arms and makes "weird noises," will not wear jeans, likes only Jurassic Park dinosaurs, and eats only certain types of food. She said that she had experienced

extensive, extreme, and dangerous behavior from Patterson, including his punching out glass windows, jumping from moving vehicles, breaking the bones of other individuals, and injuring himself.

After hearing all the evidence, the OAH administrative law judge issued an opinion affirming DHS's denial of eligibility on July 24, 2023. Patterson appealed the decision to the Pulaski County Circuit Court, which affirmed the OAH's decision. Patterson has appealed the circuit court's order.

Patterson spends almost the entirety of his brief arguing that the appellate case law on substantial evidence in administrative cases is confusing and should be clarified. We disagree and set forth our standard of review here. Our review is directed not to the decision of the circuit court but to the decision of the administrative agency. *Ark. Dep't of Health & Hum. Servs. v. R.C.*, 368 Ark. 660, 667, 249 S.W.3d 797, 803 (2007). Review of administrative agency decisions, by both the circuit court and the appellate court, is limited in scope. *Ark. Dep't of Hum. Servs. v. Holman*, 96 Ark. App. 243, 245, 240 S.W.3d 618, 619 (2006). The standard of review to be used by both the circuit court and the appellate court is whether there is substantial evidence to support the agency's findings. *Burton v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 701, at 3, 478 S.W.3d 221, 223.

An appellate court sitting in review of an administrative agency's finding must affirm the agency's finding if it is supported by any substantial evidence. Ark. Code Ann. § 25-15-212(h) (Repl. 2024); *C.C.B. v. Ark. Dep't of Health & Hum. Servs.*, 368 Ark. 540, 543–44, 247 S.W.3d 870, 872 (2007). Substantial evidence is such relevant evidence that a reasonable

mind might accept as adequate to support a conclusion, giving the evidence its strongest probative force in favor of the administrative agency. *Burton*, 2015 Ark. App. 701, at 3, 478 S.W.3d at 223.

It is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to give the evidence. *Groce v. Ark. Dep't of Hum. Servs.*, 82 Ark. App. 447, 454, 117 S.W.3d 618, 623 (2003). To establish an absence of substantial evidence, appellant is required to demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach the arrived-upon conclusion. *Id.*, 117 S.W.3d at 623. The question is not whether the testimony would have supported a contrary finding but whether it supported the finding that was actually made. *Id.*, 17 S.W.3d at 623.

Patterson argues that the OAH's decision was not supported by substantial evidence. He contends that Dr. Reddig never spoke with Patterson, Patterson's mother, Dr. Jones, or Dr. Williams. He argues that Dr. Reddig admitted that Dr. Jones and Dr. Williams were qualified to diagnose Patterson and that earlier evaluations did not rule out ASD. He claims that Dr. Reddig's rejection of those doctors' diagnoses was wrong, that Dr. Reddig's own opinions led him to disregard the proper diagnoses of ASD by two qualified professionals, and that the OAH's decision on the evidence presented therefore amounts to speculation. His argument lacks merit.

Dr. Reddig did not simply reject the opinions of Dr. Williams and Dr. Jones. He reviewed their evaluations along with numerous evaluations and records from multiple doctors and professionals over a nine-year period. Dr. Reddig issued his opinion in a

fourteen-page letter detailing the reports his team reviewed and explaining how he and his team came to their decision. He then testified, and was cross-examined by Patterson's counsel, explaining his decision and why he disagreed with the two 2021 ASD diagnoses by Drs. Williams and Jones. Patterson provided no expert testimony to rebut Dr. Reddig's testimony. The OAH administrative law judge weighed Dr. Reddig's testimony and agreed with his assessment. *Groce*, 82 Ark. App. at 454, 117 S.W.3d at 623.

Given our standard of review, we hold that substantial evidence supports the OAH's decision. Patterson did not demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach the arrived-upon conclusion. Accordingly, we affirm.

Affirmed.

GLADWIN and MURPHY, JJ., agree.

Disability Rights Arkansas, Inc., by: Derek Henderson and Thomas Nichols, for appellant.

*Abbey Trussell*, Arkansas Department of Human Services, for appellee.